UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------X

DIANE SANK,

                Plaintiff,                      10 Civ. 4975

   -against-                            OPINION

CITY UNIVERSITY OF NEW YORK,

                Defendant.

-------------------------------------X

A P P E A R A N C E S:

    Pro Se

    DIANE SANK
    173 Charlotte Pl.
    Englewood Cliffs, NJ   07632

    Attorney for Defendant

    ERIC T. SCHNEIDERMAN
    Attorney General of the State of New York
    120 Broadway, 24th Floor
    New York, NY   10271
    By:   Antoinette W. Blanchette, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10-28-11

**Sweet, D.J.**


Defendant City University of New York ("CUNY" or the

"Defendant"), has moved pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6) to dismiss the complaint of plaintiff, pro se Diane

Sank ("Sank" or the "Plaintiff") asserting claims against CUNY

for gender, age and disability discrimination and retaliation

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e et seq. ("Title VII"), the Age Discrimination in

Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"), the

Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et

seq. ("ADA"), the New York State Human Rights Law, N.Y. Exec.

Law § 290 et seq. ("NYSHRL"), and the New York City Human Rights

Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL").  Based upon

the conclusions set forth below, the motion of CUNY is granted,

and the complaint is dismissed.


**Prior Proceedings**


Sank, a professor in the Department of Anthropology at

The City College of New York ("City College"), filed her

complaint (the "Complaint") on June 25, 2010.  The Complaint

alleges that City College's reallocation of certain on-campus

1

rooms Sank had been permitted to use for storage was motivated by gender, age and disability discrimination, and retaliation for a September 7, 2005 letter in which the Plaintiff, in her capacity as the City College Ombudsperson, opposed the removal of a former Director of the Asian Studies Program.  Compl. ¶¶ 28-32.  The Complaint also references possible claims for breach of employment contract, First Amendment retaliation, Fourth Amendment improper search and seizure, Fourteenth Amendment due process and equal protection violations, hostile work environment, and violations of the New York State Constitution and CUNY's internal policy against workplace violence.  Compl. ¶¶ 3, 62, 98.

Sank, who is 82-years old, has been employed full-time as an anthropology professor at City College from 1968 to the present.  Compl. ¶¶ 8, 35.  As a result of a fractured hip and knee, Sank walks with the aid of a cane.  Comp. ¶ 35.  According to the Complaint, Sank was "elected as an Ombudsperson in 2003 and subsequently re-elected each year to 2010 (save one year)."  Compl. ¶ 69.  In her capacity as Ombudsperson, Sank, in 2005, investigated the removal of Dr. Thomas H. Lee as Director of the Asian Studies Program.  Compl. ¶¶ 38, 70-71.  That investigation led Sank to believe that Dr. Lee's removal was improper, and she

2

recommended Dr. Lee's reinstatement to the City College President in a letter dated September 7, 2005.  Compl. ¶¶ 39, 71.

Sank had been permitted to store materials temporarily in various rooms on the City College campus that were otherwise vacant and unassigned.  The Complaint alleges that the number of rooms she was permitted to use for storage of her materials was reduced by the City College administration on three occasions – in July 2006, sometime between June 28 and July 17, 2007, and again in 2008.  Compl. ¶ 30.  Sank has stated that the amount of on-campus storage space allotted to her was decreased because of her age, gender and disability, and in retaliation for actions she took in 2005 concerning her efforts to get Dr. Lee reinstated.  Compl. ¶ 62.

On August 29, 2007, Sank filed a verified complaint with the New York State Division of Human Rights ("NYSDHR") alleging that her on-campus storage space had been reduced by the City College administration on account of her age, gender and disability, and in retaliation for her September 7, 2005 letter to the City College President opposing Dr. Lee's removal. The verified complaint stated that Plaintiff's claims were

3

brought pursuant to not only the NYSHRL, but also Title VII and the ADA.  In response, the NYSDHR issued a Determination and Order After Investigation on September 3, 2009, which, among other things, concluded that "no adverse employment action was taken against the complainant either due to her age or because of her opposition to discrimination."  The Order continued:

> The investigation revealed that the complainant was not removed from the office space in which she works; only her materials were removed based on the space allocation needs of the College.  Although the complainant disagrees with how the respondent determined space at the College would be utilized, the fact that the complainant may have one fewer room in which to store her items does not rise to the level of a material change in her terms and conditions of employment.

The NYSDHR determined that there was "no probable cause" to believe that CUNY had engaged in unlawful discriminatory or retaliatory conduct.  The U.S. Equal Employment Opportunity Commission ("EEOC") adopted the findings of the NYSDHR and issued Plaintiff a Dismissal and Notice of Rights on March 23, 2010.

On November 2, 2009, Sank commenced a proceeding in New York State Supreme Court, New York County, under N.Y. C.P.L.R. § 7801 et seq. ("Article 78"), requesting that the

4

NYSDHR's no probable cause determination and dismissal of her claims be reversed.  On July 15, 2010, Justice Joan A. Madden of the New York County Supreme Court dismissed Sank's case, finding that there was sufficient evidence to conclude that the reduction of Plaintiff's on-campus storage space "did not amount to a material change in [Plaintiff]'s employment condition and was unmotivated by retaliation or age discrimination."  Thus, "it cannot be said based on the record that NYSDHR's determination of no probable cause was without a rational basis."

The instant motion was marked fully submitted on June 20, 2011.

## The Rule 12(b)(1) and 12(b)(6) Standard

"A complaint is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "In considering a motion to dismiss for lack of subject matter jurisdiction, [courts] accept as true all material factual allegations in the complaint.  However, argumentative inferences

5

favorable to the party asserting jurisdiction should not be

drawn." Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l, 968

F.2d 196, 198 (2d Cir. 1992) (citations omitted).  In evaluating

jurisdictional issues, the court may also properly consider

evidence outside the pleadings, including state and federal law.

Morrision v. Nat'l Austl. Bank, 547 F.3d 167, 170 (2d Cir.

2008), aff'd, 130 S. Ct. 2869 (2010).  "[J]urisdiction must be

shown affirmatively, and that showing is not made by drawing

from the pleadings inferences favorable to the party asserting

it." APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003).


         To survive a motion to dismiss under Fed. R. Civ. P.

12(b)(6), "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible

on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929

(2007)).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged." Iqbal, 129 S.Ct. at 1949.  This rule does

not compel a litigant to supply "detailed factual allegations"

in support of her claims, Twombly, 550 U.S. at 555, "but it

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Iqbal, 129 S. Ct. at 1949.  "A pleading that offers 'labels and conclusions' . . . will not do."  Id. (quoting Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 557). A complaint states a plausible claim when the non-conclusory facts that a plaintiff alleges allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In evaluating the present motion, the court recognizes that it is "obligated to construe a pro se complaint liberally," Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), but that "[p]ro se plaintiffs nevertheless remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in Twombly and Iqbal."  Brickhouse v. City of N.Y., No. 09 Civ. 9353(NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010); see also Bowman v. Waterside Plaza, No. 07 Civ. 239(CM), 2010 WL 2873051, at *4 (S.D.N.Y. July 21, 2010) ("the 'plausibility' standard articulated in Twombly and Iqbal applies to the pleadings of pro se plaintiffs.").

7

**The Discrimination And Retaliation Claims Are Collaterally Estopped**

"Collateral estoppel, or issue preclusion, bars the relitigation of issues actually litigated and decided in [a] prior proceeding, as long as that determination was essential to that judgment." Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995). With respect to the issue of whether a state court decision can prevent a federal court from addressing an issue, the Supreme Court has instructed that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). "New York courts apply collateral estoppel, or issue preclusion, if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002). When it applies, collateral estoppel divests a federal district court of subject matter jurisdiction over the precluded issue. See Carmellino v. Dist. 20 of N.Y.C.

8

Dep't of Educ., No. 03 Civ. 5942(PKC), 2004 WL 736988, at *6-10

(S.D.N.Y. Apr. 6, 2004) (granting summary judgment on the basis

of res judicata because plaintiffs' previous action in state

court arising out of nearly identical facts was dismissed).

In Kreme v. Chem. Constr. Corp., 456 U.S. 461, 102

S.Ct. 1883, 72 L.Ed.2d 262 (1982), the Supreme Court held that a

New York state court Title VII decision affirming an NYSDHR

dismissal was entitled to preclusive effect as to the

plaintiff's subsequent lawsuit in federal court because the

NYSDHR's procedure for investigating complaints, coupled with

the opportunity for judicial review, provided the plaintiff a

full and fair opportunity to litigate his discrimination claims.

Kremer, 456 U.S. at 483-85.  Thus, when the NYSDHR has found a

discrimination claim meritless (and not dismissed on timeliness

grounds), "a federal court in a Title VII case must give

preclusive effect to a decision of a state court upholding a

state administrative agency's rejection of an employment

discrimination claim."  Bray v. N.Y. Life Ins. Co., 851 F.2d 60,

62 (2d Cir. 1988).  "[W]here an Article 78 petition seeks an

annulment of a[n] employment disciplinary decision on the ground

that it was discriminatory or retaliatory, a determination by

the state courts that the decision was supported by substantial

9

evidence . . . forecloses a similar contention in a subsequent federal action." Richardson v. City of N.Y., No. 97 Civ. 7676(LAK), 2004 WL 325631, at *1 (S.D.N.Y. Feb. 20, 2004); see also Yan Yam Koo v. Dep't of Bldgs. of City of N.Y., 218 F. App'x 97, 98 (2d Cir. 2007) (a "New York state court affirmation of the [NYSDHR's] finding of no probable cause would preclude federal litigation based on the same facts").

Sank's prior NYSDHR complaint and Article 78 petition asserted identical claims and issues as those asserted in Sank's federal complaint, namely that the reduction of Sank's on-campus storage space was discriminatory and retaliatory. Following the NYSDHR's no probable cause finding, Sank presented documentary and testimonial evidence in a state court proceeding in which she sought judicial review of the NYSDHR's determination and once again raised her claims of discrimination and retaliation. See Kremer, 456 U.S. at 485 (concluding that "the procedures provided in New York for the determination of [employment discrimination] claims offer a full and fair opportunity to litigate the merits"). Upon consideration of the NYSDHR record and the submissions and arguments of the parties in New York Supreme Court, the state court rejected her claims and determined that "it cannot be said based on the record that

10

NYSDHR's determination of no probable cause was without a rational basis," as there was sufficient evidence to conclude that the reduction of Sank's on-campus storage space "did not amount to a material change in Sank's employment condition and was unmotivated by retaliation or age discrimination."

Because the elements of a successful employment discrimination claim are identical under both federal and state law, Sank cannot succeed in federal court on a Title VII, ADEA or ADA claim in a manner consistent with the judgment of the NYSDHR and the New York Supreme Court, which both held that there was no reason to believe that the reduction of Sank's on-campus storage space was an actionable adverse employment action, or due to discrimination or retaliation. See Kremer, 456 U.S. at 479-80 ("The elements of a successful employment discrimination claim are virtually identical; petitioner could not succeed on a Title VII claim consistently with the judgment o the NY[S]HRD that there is no reason to believe that he was terminated or not rehired because of age or religion."). Having chosen to pursue her claims regarding the reduction of her on-campus storage space before the NYSDHR and to then seek judicial review of that administrative determination in New York state court, collateral estoppel now precludes Sank from pursuing

11

Title VII, ADEA, ADA, NYSHRL, NYCHRL or any other discrimination or retaliation claims in federal court based upon the very same facts and circumstances.  As such, Sank is procedurally barred from bringing her claims in this forum.

**The Eleventh Amendment Bars The ADEA, ADA, NYSHRL And NYCHRL Claims**

In addition to being procedurally barred, Sank is precluded from raising her claims by the Eleventh Amendment. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).  This sovereign immunity bar applies regardless of the nature of the relief sought absent a state's unequivocal waiver of its immunity or an unequivocal abrogation of that immunity by Congress.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (barring plaintiff's § 1983 suit, stating "[t]he Eleventh Amendment bars such suits unless the State has waived its immunity . . . or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity."); see also

12

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97-100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Furthermore, the Eleventh Amendment "extends immunity not only to a state, but also to entities considered 'arms of the state,'" McGinty v. New York, 251 F.3d 84, 95 (2d Cir. 2001), including the senior colleges of CUNY such as City College, Clissuras v. City Univ. of N.Y., 359 F.3d 79, 83 (2d Cir.) (per curiam), cert. denied, 543 U.S. 987 (2004) ("CUNY senior colleges . . . are ultimately accountable to, and dependent upon, the state. Therefore, we agree with all of the district courts in our circuit that have considered the issue that a CUNY senior college . . . is an arm of the state."). As such, Defendant CUNY, absent an unequivocal waiver, is entitled to Eleventh Amendment immunity from Sank's claims.

A waiver of authority or abrogation of immunity will only be found if the waiver or statute at issue expresses an intent to do so with "the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction." Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Here, no valid waiver or abrogation of immunity has been presented with respect to Sank's employment discrimination claims against CUNY

13

pursuant to the ADEA, ADA, NYSHRL and the NYCHRL. See Garrett,
531 U.S. at 374 n.9 ("Congress did not validly abrogate the
States' sovereign immunity from suit by private individuals for
money damages under Title I" of the ADA); Kimel v. Fla. Bd. of
Regents, 528 U.S. 62, 91, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)
("we hold that the ADEA is not a valid exercise of Congress'
power that under § 5 of the Fourteenth Amendment.  The ADEA's
purported abrogation of the States' sovereign immunity is
accordingly invalid."); Tuckett v. N.Y. State Dep't of Taxation
& Fin., No. 99 Civ. 0679(BSJ), 2000 WL 1028662, at *2 (S.D.N.Y.
July 26, 2000) ("[N]othing in the text of the [NYS]HRL
constitutes a waiver of immunity or consent to be sued.");
Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) ("The
City of New York does not have the power to abrogate the
immunity of the State, and we have found no evidence that the
State has consented to suit in federal court under the
NYCHRL.").

          Insofar as the Complaint might be liberally construed
to assert causes of actions for First Amendment retaliation,
Fourth Amendment search and seizure, Fourteenth Amendment due
process and equal protection, violations of the New York State
Constitution, and state law contract and "internal policy"

claims against CUNY, such claims are also barred by the Eleventh

Amendment.  Because 42 U.S.C. § 1983 ("Section 1983") provides a

remedy for alleged constitutional violations, Sank cannot base

claims directly on the First, Fourth and Fourteenth Amendments.

See Pauk v. Bd. of Trs. of City Univ. of N.Y., 654 F.2d 856, 865

(2d Cir. 1981) ("when [Section] 1983 provides a remedy, an

implied cause of action grounded on the Constitution is not

available"), cert. denied, 455 U.S. 1000 (1982); Turpin v.

Mailet, 591 F.2d 426, 427 (2d Cir. 1979) (per curiam) (rejecting

cause of action grounded directly on Constitution because of

availability of Section 1983).  The State of New York has not

waived its immunity with respect to Section 1983 claims, see

Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38-40

(2d Cir. 1977), and Congress did not intend to abrogate the

States' sovereign immunity with respect to such claims.  See

Quern v. Jordan, 440 U.S. 332, 340-42, 99 S.Ct. 1139, 59 L.Ed.2d

358 (1979); see also Howlett v. Rose, 496 U.S. 356, 365, 110

S.Ct. 2430, 110 L.Ed.2d 332 (1990) ("the State and arms of the

State, which have traditionally enjoyed Eleventh Amendment

immunity, are not subject to suit under § 1983").  Similarly,

any putative New York State Constitution or state law claims

must also fail as "the Eleventh Amendment bars adjudication of

pendent state law claims against non-consenting state defendants

15

in federal court." Raygor v. Regents of the Univ. of Minn., 534

U.S. 533, 540-41, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002).

"Pendent jurisdiction does not allow a plaintiff to evade the

Eleventh Amendment's proscription against suing states or their

agencies in federal court." Chinn v. City Univ. of N.Y. Sch. of

Law at Queens Coll., 963 F. Supp. 218, 226 (E.D.N.Y. 1997).

## The NYSHRL And NYCHRL Claims Are Barred By The Election Of Remedies

Sank's claims under the NYSHRL and NYCHRL are barred

by Sank's decision to raise these claims with the NYSDHR.  Under

both the NYSHRL and NYCHRL, an individual who files a complaint

with the NYSDHR or New York City Commission on Human Rights

("NYCCHR") is barred from filing a lawsuit in state or federal

court for the same cause of action.  See N.Y. Exec. Law § 297(9)

("[a]ny person claiming to be aggrieved by an unlawful

discriminatory practice shall have a cause of action in any

court of appropriate jurisdiction for damages . . . unless such

person had filed a complaint hereunder or with any local

commission on human rights"); N.Y.C. Admin. Code § 8-502(a)

("any person claiming to be aggrieved by an unlawful

discriminatory practice . . . shall have a cause of action in

any court of competent jurisdiction for damages . . . unless
such person has filed a complaint with the city commission on
human rights or with the state division of human rights with
respect to such alleged unlawful discriminatory practice").

Once an individual pursues administrative relief for
her NYSHRL or NYCHRL claims, she has elected her remedy and any
subsequent judicial action based upon the same events is
jurisdictionally barred.  See York v. Ass'n of the Bar of the
City of N.Y., 286 F.3d 122, 127 (2d Cir.) ("[NYS]HRL and
[NY]CHRL claims, once brought before the NYSDHR, may not be
brought again as a plenary action in another court"), cert.
denied, 537 U.S. 1089 (2002); McNulty v. N.Y.C. Dep't of Fin.,
45 F. Supp. 2d 296, 303 (S.D.N.Y. 1999) ("Having elected to
pursue redress for those grievances before the [NYSDHR],
Plaintiff is now foreclosed from bringing either [NY]CHRL or
[NY]SHRL claims before this Court.").  This jurisdictional bar
is applicable to both state and federal courts as "a state law
depriving its courts of jurisdiction over a state law claim also
operates to divest a federal court of jurisdiction to decide the
claim."  Moodie v. Fed. Reserve Bank of N.Y., 58 F.3d 879, 884
(2d Cir. 1995).

17

Here, Sank's NYSHRL and NYCHRL claims are clearly
barred by the election of remedies provisions of those statutes.
As described above, Sank filed a verified complaint with the
NYSDHR on August 29, 2007, alleging that the reduction of her
on-campus storage space constituted discrimination based on her
age, gender and disability, and retaliation for opposing Dr.
Lee's removal in September 2005.  On September 3, 2009 NYSDHR
issued its Determination and Order After Investigation
addressing Sank's claims, finding "no probable cause to believe
that the respondent [CUNY] has engaged in or is engaging in the
unlawful discriminatory practice complained of."  Sank brought
her claims before the NYSDHR and, accordingly, she is
procedurally barred from bringing these same claims to this
Court.

In opposition, Sank has contended that because she was
required to file a complaint with a Fair Employment Practices
Agency ("FEPA") such as the EEOC or NYSDHR in order to preserve
her federal employment discrimination claims, she should not be
deemed to have made an "election" for purposes of the NYSHRL and
NYCHRL by filing her complaint with the NYSDHR.  However,
nothing in the relevant regulations required Sank to first file
her administrative complaint with the NYSDHR rather than the

18

EEOC.  Title VII, the ADEA and the ADA require Sank to exhaust
her administrative remedies by raising those claims with a FEPA
and obtaining a right-to-sue letter before bringing those
federal claims in court.  See Holtz v. Rockefeller & Co., Inc.,
258 F.3d 62, 82-83 (2d Cir. 2001) (citing 42 U.S.C. § 2000e-5(e)
(Title VII) and 29 U.S.C. §§ 626(d), 633(b) (ADEA)); 42 U.S.C. §
12117(a) (adopting Title VII procedures for ADA claims).  No
such requirement exists as to claims asserted under the NYSHRL
or NYCHRL.  The NYSHRL and NYCHRL explicitly provide that an
individual complaining of employment discrimination may either
file a complaint with the NYSDHR or commence a lawsuit in state
or federal court for the same cause of action, but not both.
See N.Y. Exec. Law § 297(9); N.Y.C. Admin. Code § 8-502(a).
Sank elected to bring her claim to the NYSDHR and, as described
above, once an individual pursues administrative relief before
the NYSDHR for her NYSHRL or NYCHRL claims, she has elected her
remedy and is procedurally barred from bringing her claim in
federal or state court.  See York, 286 F.3d at 127.

        Even if Sank's NYSHRL and NYCHRL claims were not
otherwise collaterally estopped and barred by the Eleventh
Amendment, they would still require dismissal pursuant to Fed.
R. Civ. P. 12(b)(1).

19

**The Title VII Claims Are Dismissed**

As described above, Sank's Title VII claims are precluded on procedural grounds.  However, even if Sank claims under Title VII were not precluded, the Complaint fails to state plausible claims for discrimination and retaliation under the relevant pleading standards.  See Iqbal, 129 S. Ct. at 1949 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its fact.").  Sank's Title VII claims fail because the Complaint is devoid of allegations plausibly suggesting, among other things, that the challenged reallocation decisions in July 2006, June or July 2007, and sometime in 2008 were actionable adverse employment actions and motivated by discriminatory or retaliatory animus.

Sank has alleged that the decision to reallocate some of her on-campus storage space was motivated, at least in part, by gender discrimination.  To establish a prima facie case of gender discrimination under Title VII, a plaintiff must ultimately demonstrate that:  (1) she is a member of a protected class; (2) she was qualified for her position and satisfactorily

20

performed her duties; (3) she suffered an adverse employment
action; and (4) the circumstances surrounding that action giving
rise to an inference of discrimination. Williams v. R.H.
Donnelly, 368 F.3d 123, 126 (2d Cir. 2004) (citing McDonnell
Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36
L.Ed.2d 668 (1973)).  Both the NYSDHR and New York state court
concluded that the reduction in her on-campus storage space did
not constitute an adverse employment action.  "[N]ot everything
that makes an employee unhappy is an actionable adverse
[employment] action." Valentine v. Standard & Poor's, 50 F.
Supp. 2d 262, 284 (S.D.N.Y. 1999), aff'd, 205 F.3d 1327 (2d Cir.
2000).  With respect to claims of disparate treatment, a
plaintiff must adduce sufficient facts suggesting that she
suffered a "materially adverse change" in the terms and
conditions of her employment as a result of the challenged
decision.  See Joseph v. Leavitt, 465 F.3d 87, 90-91 (2d Cir.
2006), cert. denied, 549 U.S. 1282 (2007).

> To be materially adverse, a change in working
> conditions must be more disruptive than a mere
> inconvenience or an alteration of job
> responsibilities.  A materially adverse change might
> be indicated by a termination of employment, a
> demotion evidenced by a decrease in wage or salary, a
> less distinguished title, a material loss of benefits,
> significantly diminished material responsibilities, or
> other indices . . . unique to a particular situation.

21

Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)
(internal quotation marks and citations omitted).

Although Plaintiff contends that the terms and
conditions of her employment were changed because the
reallocated storage space had been used by Sank for research,
scholarly, and teaching activities, the Complaint does not
contain a single allegation that Sank suffered any diminution in
title, seniority, salary or other tangible benefits as a
consequence of this decision.  The Complaint thus fails to
adequately plead that Plaintiff's loss of additional on-campus
storage space constituted an actionable adverse employment
action under Title VII.

The Complaint also fails to allege any facts plausibly
suggesting that the decision to reduce the number of rooms
allotted to Plaintiff for storage occurred under circumstances
giving rise to an inference of discrimination on the basis of
her gender.  In the context of a Title VII discrimination claim,
a plaintiff must allege facts "sufficient to plausibly suggest
[a defendant's] discriminatory state of mind" and conclusory
allegations are not entitled to the presumption of truth.

22

Iqbal, 129 S. Ct. at 1949-1952; see also Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007) (per curiam) (affirming dismissal of the plaintiff's Title VII claims because "she failed to plead any facts that would create an inference that any [adverse] action taken by . . . [any] defendant was based upon her gender.") (bracketed text in original).

The Complaint contains only conclusory assertions that Plaintiff's gender motivated the challenged reallocation decisions and an exposition on the alleged "history of discrimination against women" at City College with respect to the unrelated issue of faculty appointments. The Complaint does not, for instance, allege that any specific decision-maker at City College made comments to or about Sank from which discriminatory animus based on gender could reasonably be inferred. "The sine qua non of a gender-based discrimination action claim . . . is that the discrimination must be because of sex," Id. at 111, but Sank has failed to plead this requisite element.

Sank's complaint also alleged that the decision to reduce her on-campus storage space constituted retaliation for her opposition to the removal of Dr. Thomas H. Lee. To state a

23

prima facie claim of retaliation under Title VII, a plaintiff must allege facts sufficient to plausibly suggest:  "(1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010).

        Sank has not plausibly demonstrated that her September 7, 2005 letter objecting to Dr. Lee's removal constituted protected activity.  "[A] complaint is not protected activity unless it puts the employer on notice that the employee is protesting unlawful discrimination." Tomasino v. St. John's Univ., No. 08-CV-2059(JG)(ALC), 2010 WL 3721047, at *10 (E.D.N.Y. Sept. 23, 2010); see also Moncrief v. N.Y. Pub. Library, 343 F. App'x 627, 629 (2d Cir. 2009) (where the plaintiff's "2002 email – the basis of her retaliation claim – made no mention of racial discrimination, the district court correctly determined that she never participated in a protected activity").  "Unfair treatment . . . is not actionable under the civil rights laws and a complaint about it does not constitute protected activity.  To be actionable, the unfair treatment must be due to one's membership in a protected class and the

24

complaint must make that point sufficiently clear." Ramos v. City of New York, No. 96 Civ. 3787(DLC), 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997).

    Sank's September 7, 2005 letter cannot constitute "protected activity" because it says nothing about any form of Title VII-prohibited discrimination.  Instead, the letter complains about general perceived unfairness toward Dr. Lee that cannot support claims for retaliation under Title VII.  The objections Sank expressed are addressed solely to her belief that the manner in which Dr. Lee was removed did not comport with due process and is devoid of any reference to unlawful discrimination or any Title VII protected status as the reasons for that treatment.  Because the September 7, 2005 letter is not "protected activity" as a matter of law, Sank's Title VII retaliation claim fails.  See Shan v. N.Y.C. Dep't of Health & Mental Hygiene, No. 05 Civ. 3245(TPG), 2007 WL 2746891, at *6 (S.D.N.Y. Sept. 19, 2007) ("lengthy email . . . complaining about unfair treatment . . . and never once suggest[ing] that [plaintiff's] treatment was caused by race" is not protected activity), aff'd, 316 F. App'x 23 (2d Cir. 2009).

In addition, it was within the scope of Sank's duties as the City College Ombudsperson to investigate the complaint regarding Dr. Lee's removal and respond accordingly. In fact, according to Sank, "[t]he main objective of this position [as Ombudperson] was to assist in resolving complaints from faculty, staff and students at the school . . . [and,] [i]n accordance with this obligation, [plaintiff] investigated the removal" of Dr. Lee. However, an employee investigating or reporting complaints of alleged misconduct pursuant to her official duties is not engaged in inherently oppositional activity. See, e.g., Correa v. Mana Prods., Inc., 550 F. Supp. 2d 319, 331 (E.D.N.Y. 2008) (dismissing employee's retaliation claim because she failed to identify a protected activity separate from her official duty to investigate internal complaints of discrimination).

Beyond Sank's inability to demonstrate that the downsizing of her on-campus storage space constitutes an adverse employment action, the Complaint fails to plead any facts demonstrating a causal connection between the September 7, 2005 letter and the reduction of Sank's on-campus storage space. Proof of a causal connection can be offered either "directly through evidence of retaliatory animus directed against a

26

plaintiff" or "indirectly by showing that the protected activity was followed closely by the discriminatory treatment." DeCintio v. Westchester Cty. Med. Ctr., 821 F.2d 111, 115 (2d Cir.), cert. denied, 484 U.S. 965 (1987). A causal connection cannot be established based upon temporal proximity where the alleged adverse employment action is too temporally remote from the alleged protected activity. See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (noting that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close."); see also Nicastro v. Runyon, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) ("[c]laims of retaliation are routinely dismissed when as few as three months elapse between the protected EEO activity and the alleged act of retaliation."). Here, ignoring the later two episodes, at least ten months elapsed between the September 7, 2005 letter and the decision to reallocate some of Sank's on-campus storage space in July 2006. The lack of temporal proximity between these events negates any possible inference that the reduction of Sank's on-campus storage space in 2006, 2007 and 2008 was motivated by retaliatory animus.

27

As evidence of discriminatory and retaliatory animus, Sank has cited a July 18, 2006 email from Dean Brett Silverstein that does not mention Sank's gender or participation in protected activity.  According to Sank, Dean Silverstein's opening statement that "I have been instructed to inform you . . ." should be construed as a "clear message from the 'Higher Administration' of City College that they were 'displeased' with" Sank.  The language of this email does not establish that the relevant decision-makers acted with the discriminatory and retaliatory intent Sank's complaint alleges.

Sank has also asserted that she "was treated differently that similarly situated male . . . employees who were given the space."  While the law permits a plaintiff to raise a plausible inference of discrimination by alleging "preferential treatment given to similarly situated individuals," Perry v. State of N.Y. Dep't of Labor, No. 08 Civ. 4610(PKC), 2009 WL 2575713, at *2 (S.D.N.Y. Aug. 20, 2009), aff'd, 398 F. App'x 628 (2d Cir. 2010), this method is allowed only if the alleged comparators are "similarly situated in all material respects," Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997).  Absent allegations plausibly

28

suggesting that the male colleagues who purportedly received superior treatment were similarly situated to Sank in all relevant respects – i.e., that those male colleagues were permitted to occupy up to four rooms for storage of their personal materials, while Sank was not – Sank's conclusory assertions of differential treatment do not permit a plausible inference of gender discrimination.

Sank has also asserted that she engaged in additional Title VII "protected activity" in temporal proximity to the initial July 2006 reallocation decision, noting that she "presented verbal reports about the issues in the Dr. Lee matter to the Faculty Senate on at least two occasions . . . [on] March 16, 2006 and April 27, 2006." Sank cites the minutes to these meetings, but these minutes establish that the objections expressed by Sank during the March 16, 2006 and April 27, 2006 Faculty Senate meetings were solely based on her apparent belief that there were procedural and due process improprieties in the manner in which Dr. Lee was dismissed. The March 16, 2006 and April 27, 2006 Faculty Senate Plenary Meeting minutes Sank submitted with her opposition include the following excerpts:

> Professor Sank wanted to report on some governance issues
> that occurred in the Asian Studies department.  It was

29

alleged that there were some CUNY Bylaws Article 9
violations, as the Chair of the Asian Studies Department
Professor Thomas Lee . . . [was] removed by President
Williams last year.  Sank Ex. I at 2.


Professor Sank . . . [indicated] [t]here are still major
issues with regard to governance and the changes that
occurred with the Asian Studies program.  A future
investigation will need to be conducted in order to
determine if there were any procedural violations.  Sank
Ex. J at 2.

Nothing in the minutes from the March 16, 2006 and April 27,

2006 Faculty Senate meetings demonstrates that Sank opposed Dr.

Lee's removal on account of Title VII-prohibited discrimination.

The retaliation claims fail because Sank cannot show that her

September 2005 letter or her March and April 2006 verbal reports

regarding Dr. Lee's removal constituted protected activity

within the meaning of Title VII.


        Even if Sank's claims were not procedurally barred,

the Complaint fails to state plausible Title VII claims for

gender discrimination and retaliation, thus requiring that these

claims be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## Conclusion

Based upon the conclusions set forth above, the motion of CUNY is granted and the complaint is dismissed in its entirety with prejudice.

It is so ordered.

New York, NY
October 2 7, 2011

ROBERT W. SWEET